IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ELIGIO ROMERO BACALLAO, JR.,

                             Petitioner,

          v.

BRIAN FOSTER,

                             Respondent.

OPINION  AND  ORDER

18-cv-403-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

On October 31, 2014, petitioner Eligio Romero Bacallao, Jr., was convicted, after a bench trial, of stalking (two counts), third degree sexual assault (as lesser included offense of a second degree sexual assault charge), unlawful use of a computerized communication system, threats to injure, felony bail jumping (three counts), operating after revocation and disorderly conduct.  State v. Bacallao, consolidated Dane County Case Nos. 13-CF-760, 13-CT-1282 and 13-CF-1863.  He was sentenced to a term of 12 years imprisonment, to be followed by six years of extended supervision.  Petitioner appealed from his sentence, but was unsuccessful in the state courts.  He now seeks a writ of habeas corpus under 28 U.S.C. § 2254, challenging the constitutionality of his conviction on two grounds:  (1) the state trial court erred in allowing petitioner to represent himself; and (2) there was insufficient evidence at trial to convict him of sexual assault because the alleged victim's withdrawal of her previous consent to sexual intercourse was not unambiguous.

For the reasons st forth below, I conclude that petitioner has not established that the Wisconsin Court of Appeals failed to apply clearly established federal law or that it

1

unreasonably determined the facts in light of the evidence presented when it rejected his claims and affirmed his conviction. Accordingly, his petition will be denied.

The following facts are taken from the petition and the state court records provided by petitioner and the state.

## BACKGROUND

In consolidated Dane County cases nos. 13-CF-760, 13-CT-1282, 13-CF-1863 and 14-CF-213, petitioner was charged with stalking (two counts), second degree sexual assault, unlawful use of a computerized communication system, threats to injure, felony bail jumping (four counts), operating a vehicle after revocation and disorderly conduct. The sexual assault charge was based on allegations that petitioner had nonconsensual sex with L.H., a woman with whom he had been in a relationship for about a month.

### A. Pretrial Waiver of Counsel

At what was originally scheduled as a preliminary hearing on August 7, 2013, before Dane County Circuit Judge Peter Anderson, petitioner's appointed attorney, Tracy Lencioni, announced that petitioner wanted to fire her. She requested a competency evaluation because she believed there was reason to doubt petitioner's competency to proceed. Dkt. #23-7 at 2. Although petitioner demanded that he be allowed to represent himself, Judge Anderson adjourned the preliminary hearing and ordered a competency evaluation. Id. at 4-7.

2

On September 11, 2013, Judge Anderson held a competency hearing with respect to petitioner's stalking charge in case no. 13-CF-760. Attorney Lencioni moved to withdraw as petitioner's counsel. Relying on a competency evaluation and report prepared by a Dr. Craig Schonecker, finding petitioner competent to proceed, Attorney Lencioni believed that petitioner was competent to fire her and represent himself. Dkt. #23-8 at 2. Petitioner stated "[s]he's fired, done" and "I'm pro se, your Honor" and asked to proceed pro se. Dkt. #23-8 at 3. Judge Anderson conducted a waiver and competency colloquy pursuant to State v. Klessig, 211 Wis.2d 194, 564 N.W.2d 716, 721 (1997). (The legal standard regarding this colloquy is discussed at length below.)

During the colloquy, petitioner stated that he was 28 years old, had completed the twelfth grade but had not received a diploma and could read, write and understand English. He stated that he was not being treated for any mental or emotional problems, although he had been treated for some in the past. Petitioner also stated that he had not consumed any drugs or alcohol in the previous 24 hours. He denied having any physical or psychological difficulties that would affect his ability to understand and communicate with the court. Judge Anderson then reviewed the elements and penalties for stalking with petitioner and encouraged him to get a lawyer, but petitioner refused. Judge Anderson told petitioner that he could change his mind later. Petitioner then filled out and signed a form acknowledging the advantages of representation by counsel and the disadvantages of self-representation. Petitioner said that he understood "100 percent" and filled out the form stating that he was waiving his right to counsel freely and voluntarily. He also insisted that he was able to

represent himself despite the acknowledged disadvantages. Judge Anderson accepted petitioner's waiver of counsel and considered whether petitioner was competent to represent himself. Relying heavily on Dr. Schonecker's report finding petitioner competent to stand trial, Judge Anderson found petitioner competent to represent himself at the preliminary hearing, but told petitioner that he could change his mind and obtain counsel at a later stage. Dkt. #23-8 at 3-15.

At an October 7, 2013 initial appearance in case no. 13-CF-1863 on bail jumping and disorderly conduct charges, petitioner stated "I'm pro se. I'm representing myself in the Criminal Justice System in the State of Wisconsin." Dkt. #23-9 at 3. Dane County Court Commissioner Todd Meurer encouraged petitioner to take a form from the public defender's office and advised petitioner that he was facing six years in prison and needed a lawyer. Dkt. #23-9 at 3, 10-11. In addition, at a preliminary hearing in case nos. 13-CF-760 and 13-CF-1863 on October 17, 2013, Judge Anderson warned petitioner about the disadvantages of self-representation. Dkt. #23-10 at 26-27.

At a January 13, 2014 status conference in case nos. 13-CF-760, 13-CF-1863 and 13-CT-1282, petitioner again insisted on representing himself, so Dane County Circuit Court Judge Nicholas McNamara conducted a second <u>Klessig</u> waiver colloquy before accepting petitioner's waiver of counsel. Dkt. #23-11 at 2-6. Petitioner also appeared pro se at a bail hearing in case no. 14-CF-213 on February 6, 2014, at which Court Commissioner Meurer stated that he would direct someone from the public defender's office to visit petitioner in jail. Petitioner responded "No, I'm going to pro se represent myself in the Criminal Justice

System" and "[t]hat's my right as an attorney." Dkt. #23-12 at 11. Commissioner Meurer told petitioner that he needed to find a lawyer as quickly as possible. Id.

At a February 14, 2014 status conference, Judge McNamara again addressed petitioner's insistence on representing himself, reminding petitioner of the January 13 Klessig colloquy during which he had discussed the disadvantages of petitioner representing himself. Because Judge McNamara was concerned about petitioner's competency in light of his non-responsive answers to questions about whether he intended to wear a jail uniform or civilian clothes at trial (petitioner had not yet decided to waive a jury trial), he adjourned the matter for arraignment and a competency determination. Dkt. #23-13 at 2-12.

At a joint competency hearing and arraignment on March 10, 2014, Judge McNamara noted that Dr. Schonecker had previously found that petitioner was competent to stand trial and assist with his own defense, was not suffering from any particular mental disorder, was not delusional or hallucinating, was able to focus and have logical thoughts and was not suffering from a psychiatric disorder, except that he had a diagnosis of a personality disorder. Petitioner stated that he agreed with Dr. Schonecker's assessment and insisted that he was competent to proceed to trial and represent himself, having done so before. Therefore, Judge McNamara accepted the report and found petitioner competent to stand trial and able to control his behavior. Dkt. #23-14 at 3-7. Even though Judge McNamara encouraged petitioner to obtain a lawyer because of the seriousness of the charges against him, petitioner insisted on exercising his right to represent himself. Id. at 24-26. After asking petitioner several more questions in a Klessig-type colloquy, Judge McNamara reserved ruling on

whether petitioner was competent to represent himself at trial.  Id. at 25-31.

Petitioner was not present for a May 5, 2014 status conference because he had been sent to the Winnebago Mental Health Institute for emergency detention for exhibiting violent behavior and suicidal threats at the Dane County jail.  Judge McNamara adjourned the upcoming trial date.  Dkt. #23-15 at 2-5.

At an August 27, 2014 bail hearing before Judge McNamara, petitioner appeared with Attorney Mark Frank who had filed a bail motion and a motion to withdraw as counsel. Dkt. #23-16 at 2.  Petitioner made it clear that despite Frank's presence, he still intended to represent himself.  Id. at 9-10.  Judge McNamara then conducted an extensive Klessig colloquy during which petitioner said he could read English and Spanish "fluently," denied having any mental illness or taking medication other than a sleep aid, described his education and acknowledged his understanding of the charges, their elements and their maximum penalties.  Id. at 9-14, 18-19.  Petitioner specifically refused the court's offer of standby counsel, id. at 15, but he later stated that "[i]t would be fine with" him if standby counsel was appointed if that is what the court decided.  Id. at 23.  Frank stated that he would provide petitioner the elements and jury instructions for all of the charged offenses. Id. at 20-22.  Judge McNamara found petitioner competent to represent himself and told petitioner that his decision to represent himself would be "final."  He did not appoint standby counsel, explaining that standby counsel is more for the court's convenience and was not necessary in petitioner's case because petitioner had elected a court trial.  Judge McNamara also believed that petitioner would become frustrated with standby counsel.  Id.

at 22-25.

B. <u>Trial</u>

Petitioner proceeded to a bench trial before Judge McNamara on October 28, 2014. Dkt. ##23-17 to -21.  At the beginning of trial, Judge McNamara reviewed petitioner's right to have an attorney and asked petitioner if he still wanted to represent himself, whether he had any questions and whether he understood the disadvantages of self-representation.  Dkt. #23-17 at 4-5; dkt. #23-2 at ¶ 28.  Judge McNamara also reviewed the burden of proof and petitioner's rights regarding his own testimony and the cross examination of witnesses.  Dkt. #23-17 at 24-25.  The trial lasted a total of four days.

On the first day of trial, L.H. testified for the state that she met petitioner in the middle of January 2014 and began a relationship that soon turned abusive and violent.  On February 3, 2014, L.H. invited petitioner to her apartment with the intent of ending the relationship, and the two had consensual sexual intercourse in her bedroom.  Petitioner initially wore a condom, but took it off while they were having sex.  Although L.H. did not say whether she verbally objected to petitioner's removing the condom, she testified that she did not want to be pregnant.  L.H. further testified that petitioner directed  L.H. to go into the bathroom where he had anal and vaginal intercourse with her without her consent.  L.H. testified that she "denied" petitioner with her body language by turning and pulling away. She testified that she was not sure whether she told petitioner that she did not want to have sex, but she stated that her body language was clear that she was rejecting him.  L.H. testified

that she was "scared to convey anything" to petitioner. Despite her resistance, petitioner penetrated L.H. anally and then vaginally. Dkt. #23-2 at ¶ 6; dkt. #23-17 at 97-103. No other witness testified about the encounter in the bathroom. Dkt. #23-2 at ¶ 6.

On the second day of trial, petitioner announced for the first time that he had changed his mind and wanted a public defender because he claimed to be "discombobulated" from Haldol administered to him by jail personnel to control his behavior. Dkt. #23-19 at 53-56. Judge McNamara denied the request after reviewing the lengthy record showing that petitioner had repeatedly waived counsel and claimed that he was competent to represent himself. However, because he was concerned that petitioner seemed drowsy and not fully coherent, Judge McNamara adjourned the trial to the next day in hopes that petitioner's condition would improve. Id. at 56-70.

At the beginning of the third day of trial, petitioner renewed his request for counsel, demanded a jury trial and requested standby counsel, stating that he wanted to "start over." Petitioner said he felt much better and did not feel any side effects from the previous day's medication, and Judge McNamara agreed that he appeared to be much better than the day before. Dkt. #23-20 at 3-5, 7. Judge McNamara reviewed petitioner's case history showing that he had voluntarily waived his right to counsel on numerous occasions and was competent to represent himself. Id. at 7-32. He found that petitioner's "clear, adamant, articulate, unambiguous insistence that he represent himself over a long period of time had to be given great weight" and stated that petitioner "seems to be indicating an agreement that even today that he understood the advantages of having a lawyer, that he understood

8

that he might be at a disadvantage, although [] he disagreed with that because he had successfully represented himself in different court proceedings." Id. at 34-35. He noted that the fact that petitioner may now recognize "that the evidence is a little stronger or his abilities are a little weaker than he thought doesn't change the knowing, intelligent and voluntary waiver." Id. at 39. Therefore, Judge McNamara denied petitioner's request to start over with counsel and decided not to appoint standby counsel because there was no need for one in a court trial. Id. at 15, 43-44. Petitioner then became disruptive, stated that he was going to leave the courtroom and waived his right to be present for the remainder of the trial. Id. at 44-74.

The state resumed its case in petitioner's absence by calling two more witnesses and then resting. Dkt. #23-20 at 74-94. Assuming that petitioner would have filed a motion to dismiss if he had been present, Judge McNamara considered and denied petitioner's "constructive" motion to dismiss. He then gave petitioner another chance to return to the courtroom to present evidence, call witnesses or testify, if he promised to behave. Petitioner chose to return to the courtroom and testified on his own behalf. Id. at 95-180. He also called as a witness his brother, who attempted to challenge L.H.'s credibility in part by testifying that L.H. had stated that she was having petitioner's baby voluntarily. Id. at 181-84.

Judge McNamara found petitioner guilty on all counts except the bail jumping charge in case no. 14-CF-213. With respect to the charge of second degree sexual assault, Judge McNamara found reasonable doubt as to whether petitioner had used or threatened force.

However, he found petitioner guilty of the lesser included offense of third degree sexual assault because there was no reasonable doubt that petitioner had had sex with L.H. in the bathroom without her consent. Dkt. #23-21 at 29-38.

On January 20, 2015, Judge McNamara sentenced petitioner to 12 years of initial confinement followed by six years of extended supervision. Dkt. #23-21 at 8-38; dkt. #23-22 at 58.

### C. Postconviction Motions and Appeals

With the assistance of counsel, petitioner filed a postconviction motion under Wis. Stat. § 809.30, alleging that he had not been competent to represent himself at trial and that the evidence was insufficient to convict him of third-degree sexual assault. Dkt. #23-4 at 48-66. In a decision and order issued on June 8, 2016, the trial court denied petitioner's motion summarily without an evidentiary hearing, finding that it had addressed the issues raised by petitioner during the underlying court proceedings. With respect to petitioner's self-representation, the trial court noted that petitioner had advocated consistently and adamantly to represent himself, his mental illness had been treated effectively and he exhibited intelligence and extensive familiarity with criminal legal proceedings, successfully representing himself in a previous felony trial. Dkt. #23-4 at 46-47.

Petitioner appealed, again with the assistance of counsel, and the Wisconsin Court of Appeals affirmed the trial court's decision on July 13, 2017, holding that there was sufficient evidence from which the trial court could find petitioner guilty of third-degree

sexual assault. Dkt. #23-2. The court of appeals also held that the trial court properly allowed petitioner to exercise his right to self-representation at pretrial proceedings and at trial because he voluntarily and intelligently waived his right to counsel, he was competent to represent himself at every stage and he had been made fully aware of the dangers and disadvantages of self-representation. Dkt. #23-2 at 5-18. The Wisconsin Supreme Court denied petitioner's petition for review on November 13, 2017. Dkt. #23-3.

OPINION

In his habeas petition, petitioner seeks relief on the grounds that: (1) the state trial court erred in allowing him to represent himself; and (2) there was insufficient evidence at trial to convict him of sexual assault because the alleged victim did not withdraw unambiguously her previous consent to sexual intercourse. Because the Wisconsin Court of Appeals addressed the merits of petitioner's claims, my review is subject to the deferential standard of review under 28 U.S.C. § 2254(d).

To prevail on his petition, petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c), 2254(a). In deciding whether petitioner has made this showing, I look to the "last reasoned state-court opinion" that addressed his claims. Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Ford v. Wilson, 747 F.3d 944, 949 (7th Cir. 2014). Petitioner must show that any claim that was addressed on the merits by the Wisconsin Court of Appeals "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a past decision of the Supreme Court or reaches a different conclusion from that reached by the Supreme Court on the basis of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 404-08 (2000). A state court unreasonably applies clearly established precedent if it identifies the correct governing legal principle but unreasonably applies that principle to the facts of the case. Brown v. Payton, 544 U.S. 133, 141 (2005); Bailey v. Lemke, 735 F.3d 945, 949-50 (7th Cir. 2013).

Alternatively, petitioner can obtain relief if he shows that the state court's adjudication of his claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding." 28 U.S.C. § 2254(d)(2). A federal court may conclude that a state court decision was based on an unreasonable determination of the facts only "if it rests upon factfinding that ignores the clear and convincing weight of the evidence." Taylor v. Grounds, 721 F.3d 809, 817 (7th Cir. 2013). The underlying state court findings of fact and credibility determinations against a petitioner are presumed correct unless the petitioner comes forth with clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Campbell v. Smith, 770 F.3d 540, 546 (7th Cir. 2014) (citing Newman v. Harrington, 726 F.3d 921, 928 (7th Cir. 2013)). I will evaluate each of petitioner's claims under these standards below.

A. <u>Waiver of Right to Counsel</u>

The Sixth Amendment guarantees a criminal defendant the right to representation by counsel at all critical stages of a criminal proceeding, including trial. <u>Marshall v. Rodgers</u>, 569 U.S. 58, 62 (2013) (per curiam); <u>Gideon v. Wainwright</u>, 372 U.S. 335, 344 (1963). It also guarantees an accused the right to waive counsel and represent himself at trial if he is competent to do so voluntarily and intelligently. <u>Marshall</u>, 569 U.S. at 62; <u>Faretta v. California</u>, 422 U.S. 806, 835-36 (1975). "There can be some tension in these two principles," <u>Marshall</u>, 569 U.S. at 62, because they involve "mutually exclusive" rights; the exercise of one right waives the other. <u>United States v. Traeger</u>, 289 F.3d 461, 475 (7th Cir. 2002).

To exercise the right to self-representation, a defendant must "knowingly and intelligently" waive his right to counsel. <u>Faretta</u>, 422 U.S. at 835; <u>McGhee v. Dittmann</u>, 794 F.3d 761, 769 (7th Cir. 2015). Before allowing a criminal defendant to represent himself, a trial court must: (1) ascertain that the defendant is competent to waive the right to counsel, where competence might appear to be at issue; and (2) "satisfy itself that the [defendant's] waiver of his constitutional rights is knowing and voluntary." <u>Godinez v. Moran</u>, 509 U.S. 389, 400-01 (1993) (citing <u>Faretta</u>, 422 U.S. at 835). With respect to competency, the United States Supreme Court has held that "the Constitution permits judges to take realistic account of the particular defendant's mental capacities by asking whether a defendant who seeks to conduct his own defense at trial is mentally competent to do so." <u>Indiana v. Edwards</u>, 554 U.S. 164, 177-78 (2008). In <u>Edwards</u>, the Court "reasoned

that allowing a defendant who was fit to stand trial but who nevertheless lacked the mental capacity to 'carry out the basic tasks needed to present his own defense without the help of counsel' would call into question the fundamental fairness of proceedings in which he was unrepresented." Washington v. Boughton, 884 F.3d 692, 703 (7th Cir. 2018) (quoting Edwards, 554 U.S. at 177-78). To make sure that his waiver of counsel is knowing and voluntary, the trial court must warn the defendant "of the dangers and disadvantages of self-representation" before it allows him to act as his own lawyer. Faretta, 422 U.S. at 835.

The Wisconsin Supreme Court has interpreted Faretta and Godinez to require the trial court to conduct a colloquy to determine whether a defendant seeking to proceed pro se (1) has made a deliberate choice to proceed without counsel; (2) is aware of the difficulties and disadvantages of self-representation; (3) is aware of the seriousness of the charge or charges against him; and (4) is aware of the general range of penalties that could have been imposed on him. State v. Klessig, 211 Wis.2d 194, 206, 564 N.W.2d 716 (1997). In addition, Wisconsin applies a higher standard of competency than required in Godinez, requiring the trial court to determine whether the defendant is competent to represent himself, considering factors such as the defendant's education, literacy, fluency in English and physical or psychological disabilities which may significantly his ability to communicate. Id. at 212, 214.

In this case, the Wisconsin court of appeals correctly applied the standards set forth in Faretta and Klessig and determined that petitioner knowingly, voluntarily and intelligently waived his right to counsel. It found that petitioner first waived his right to counsel and

exercised his right to represent himself at the September 2013 pretrial hearing, and then reiterated his intent to proceed pro se at a bail hearing in August 2014 and the start of trial. Dkt. #23-2 at ¶¶ 13, 18-22. The court of appeals reviewed the colloquies that the circuit court conducted at the two pretrial hearings and the beginning of trial and found that it adequately considered all of the <u>Klessig</u> factors in determining that petitioner understood the difficulties and disadvantages of representing himself and that he was competent to proceed without counsel. Although petitioner refers briefly in his petition to his past mental health history and treatment, he does not argue in his supporting brief that the state courts erred in finding him competent to represent himself or in finding that he knowingly, voluntarily and intelligently waived his right to counsel.

The court of appeals's decision with respect to petitioner's waiver of counsel and competency was not contrary to, or an unreasonable application of, clearly established federal law. For more than a year, petitioner consistently demanded that he be allowed to represent himself. The circuit court agreed only after thoroughly and repeatedly insuring on the record that petitioner's waiver of counsel was voluntary and intelligent, that he remained competent to represent himself and that he was fully advised of the dangers and disadvantages of self-representation. In addition, the physician who examined petitioner for competency found that he did not have a psychiatric disorder and was not being treated for any mental illness.

In his brief in support of his petition, petitioner argues that he had the right to change his mind about proceeding pro se and invoke his right to counsel on the third day of trial.

He also contends that at a minimum, the trial court should have appointed standby counsel for him, as he requested during the August 2014 bail hearing. As an initial matter, petitioner does not have a constitutional right to the appointment of standby counsel. <u>Simpson v. Battaglia</u>, 458 F.3d 585, 597 (7th Cir. 2006) ("[T]here is no Supreme Court precedent clearly establishing such a right."). <u>See also</u> <u>United States v. Bodley</u>, 674 Fed. Appx. 576, 576-77 (7th Cir. 2017) ("[A] defendant who exercises his Sixth Amendment right to represent himself does not have a right to standby counsel, let alone effective standby counsel"). There also is no Sixth Amendment right to "hybrid" representation in which petitioner acts as co-counsel with an attorney. <u>United States v. Chavin</u>, 316 F.3d 666, 671-72 (7th Cir. 2002); <u>United States v. Kosmel</u>, 272 F.3d 501, 506 (7th Cir. 2001). In Wisconsin, the primary purpose of appointing standby counsel is to insure that the trial proceeds in an orderly manner, so the decision is left to the discretion of the trial court. <u>State v. Lehman</u>, 137 Wis. 2d 65, 77-78, 403 N.W.2d 438, 444 (1987) ("The decision to appoint stand-by counsel in this case was based, as it should be, on a determination that the needs of the Trial Court and not the Defendant, would be best served by doing so."). In applying this standard, the court of appeals reasonably determined that the circuit court provided sound reasons for denying standby counsel for petitioner, explaining that standby counsel was not necessary in petitioner's case because petitioner had elected a court trial and that petitioner likely would become frustrated with counsel. The court also reasonably noted that the potential bias against petitioner resulting from any misconduct during trial was minimal because no jury would be present. Accordingly, the court of appeals's finding that

the circuit court did not abuse its discretion in denying petitioner standby counsel was not contrary to or an unreasonable application of clearly established federal law.

With respect to petitioner's argument that he had the right to change his mind, the court of appeals held that he failed to "point to any legal authority for the proposition that [his] difficulties during trial required the court to find him incompetent to represent himself at the start of trial or to stop the trial and appoint counsel." Dkt. #23-2 at ¶ 15. The finding is not contrary to, or an unreasonable application of, clearly established federal law because petitioner does not have a constitutional right to revoke an otherwise voluntary and intelligent waiver of counsel during the middle of trial. John-Charles v. California, 646 F.3d 1243, 1249-50 (9th Cir. 2011) (Supreme Court has not ruled whether and under what conditions defendant who validly waives right to counsel has Sixth Amendment right to reassert it later in criminal trial). "[O]nce trial commences, the district court retains discretion to balance the interests of the defendant against the potential disruption of the proceedings already in progress." United States v. Kosmel, 272 F.3d 501, 506 (7th Cir. 2001). See also Rhodes v. Dittman, 783 F.3d 669, 674 (7th Cir. 2015) (quoting United States v. Tolliver, 937 F.2d 1183, 1187 (7th Cir. 1991) ("Faced with a defendant who declares h[im]self legally incompetent on the threshold of trial, the court must step back and assess the situation as a whole, including potentially 'serious inconvenience to judge, jury, opposing counsel, witnesses, and other litigants.'"). The Court of Appeals for the Seventh Circuit has explained that

> The problem is, savvy criminal defendants have learned to manipulate the
> system by withdrawing requests for self-representation at the eleventh hour

(or, as here, in midstream) in order to cause delay. Trial courts are thus faced with a dilemma. On one hand, "a trial judge is hard-pressed to deny the aid of counsel to a defendant who initially seeks to represent himself but later declares himself legally incompetent to proceed any further," <u>Horton v. Dugger</u>, 895 F.2d 714, 716 (11th Cir.1990); and on the other hand, "the last minute grant of a continuance can cause serious inconvenience to judge, jury, opposing counsel, witnesses, and other litigants." <u>United States v. Fountain</u>, 768 F.2d 790, 794 (7th Cir.1985). . . . It is well within the discretion of the court to deny as untimely requests for counsel made after meaningful trial proceedings have begun. <u>See e.g.</u>, <u>Horton</u>, 895 F.2d at 717 (citing cases).

<u>Tolliver</u>, 937 F.2d at 1187. <u>See also</u> <u>United States v. Solina</u>, 733 F.2d 1208, 1211-12 (7th Cir. 1984) (pro se defendant who "at the last minute . . . gets cold feet and wants a lawyer to defend him . . . runs the risk that the judge will hold him to his original decision in order to avoid the disruption of the court's schedule that a continuance granted on the very day that trial is scheduled to begin is bound to cause").

Applying <u>Gideon</u> and <u>Faretta</u>, the Wisconsin court of appeals found ample support in the record for the circuit court's decision to deny petitioner's mid-trial request to invoke his right to counsel. On the third day of trial, petitioner told the circuit court that he needed counsel because he wanted to "start over." The circuit court reviewed the lengthy record showing that petitioner had repeatedly waived counsel and was competent to represent himself, and found that the fact that petitioner may recognize that the evidence was stronger or his abilities were weaker than he originally thought did not change the fact that he had made a knowing, intelligent and voluntary waiver. As discussed above, the record shows that petitioner did not suffer from a serious mental illness that rendered him incompetent to represent himself, and this did not change during trial. Although petitioner reported on the second day of trial that Haldol administered to him by jail personnel had made him feel

dizzy and "discombobulated," Judge McNamara noted, and petitioner agreed, that he was better by the next morning and ready to proceed.

For these reasons, I conclude that petitioner is not entitled to habeas relief with respect to his waiver of counsel claims.

## B. Sufficient Evidence to Support Sexual Assault Conviction

In evaluating a habeas claim based on insufficiency of the evidence, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). To convict petitioner of third degree sexual assault, the state had to prove that he had sexual intercourse with L.H. without her consent. Wis. Stat. § 940.225(3) (eff. Dec. 14, 2013 to Mar. 29, 2018). (Second degree sexual assault, with which petitioner was charged originally, is "sexual contact or sexual intercourse with another person without consent of that person by use or threat of force or violence." Wis. Stat. § 940.225(2) (eff. Dec. 14, 2013 to Mar. 29, 2018).) The term "consent" is defined as "words or overt actions by a person who is competent to give informed consent indicating a freely given agreement to have sexual intercourse." Wis. Stat. § 940.225(4). See also Gates v. State, 91 Wis. 2d 512, 520, 283 N.W.2d 474, 478 (Ct. App. 1979) (State must "prove the victim did not by either words or overt actions freely agree to have sexual contact or intercourse with the defendant."). A victim's failure to say no or otherwise resist does not mean that he or she consented. State

v. Long, 2009 WI 36, ¶ 31, 317 Wis. 2d 92, 765 N.W.2d 557.  See also Wis. JI Crim. 1218A ("In deciding whether [the victim] did not consent, you should consider what [the victim] said and did, along with all the other facts and circumstances.  This element does not require that [the victim] offered physical resistance.").

Applying the Jackson standard as reiterated in State v. Poellinger, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757 (1990), the Wisconsin court of appeals found that L.H. provided sufficient credible testimony to support petitioner's conviction of third degree sexual assault. In particular, the court found that L.H.'s testimony that she turned and pulled away from petitioner in the bathroom and rejected him showed that she did not freely consent to sexual intercourse with petitioner in the bathroom.  Petitioner did not present any evidence to challenge this testimony or argue that L.H. freely agreed to have sexual intercourse with him in the bathroom.  Rather, petitioner contends—as he did on appeal—that after freely consenting to sexual intercourse in the bedroom, L.H. did not "unambiguously communicate that she withdrew her consent" to "subsequent sexual intercourse in a different room."  The court of appeals rejected this argument expressly, finding no legal support for petitioner's contention that a person's initial consent to sexual intercourse "persists until explicitly withdrawn" in cases in which there were two separate sexual encounters.  Dkt. #23-2 at ¶¶ 7-8.  The court reasonably noted that sexual encounters separated by the nature of the act, time, place and intent are separate and distinct offenses.  Harrell v. State, 88 Wis. 2d 546, 573, 277 N.W.2d 462, 473 (Ct. App. 1979).  Accordingly, the court of appeals had a reasonable basis for upholding the circuit court's finding that petitioner was guilty of third

degree sexual assault.

## C.  Certificate of Appealability

The only remaining question is whether to grant petitioner a certificate of appealability.  Under Rule 11 of the Rules Governing Section 2254 Proceedings, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner.  To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Tennard v. Dretke, 542 U.S. 274, 282 (2004).  This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted).  In this instance, I consider it possible that the petition could have been resolved differently.  Accordingly, I am granting petitioner's request for a certificate of appealability.

ORDER

IT IS ORDERED that petitioner Eligio Romero  Bacallao, Jr.'s motion for a writ of habeas corpus under 28 U.S.C. § 2254 is DENIED.   Petitioner is GRANTED a certificate of appealability.

Entered this 8th day of November, 2019.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge